UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALVIN WILLIAM JOHNSON,
Plaintiff,

v.

S. POSSON, et al.,
Defendants.

Case No. 19-cv-03883-YGR (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT**

## I. INTRODUCTION

This is a *pro se* civil rights complaint under 42 U.S.C. § 1983 filed by Plaintiff, a former state prisoner, in which he raises claims stemming from medical care he received for his ankle at Correctional Training Facility ("CTF") and previously at Sierra Conservation Center ("SCC") and High Desert State Prison ("HDSP"). He seeks monetary damages. Plaintiff has named the following Defendants at CTF: Chief Medical Executive at the California Correctional Health Care Services ("CCHCS") S. Posson; Warden C. Koenig; Doctor Ashby; and certain Doe Defendants, including an "attending doctor (name unknown)" and an unnamed "attending nurse." Dkt. 1 at 2-5.[1] Plaintiff also names the following Defendants at SCC: Doctor Thomatos and certain Doe Defendants, including the "SCC chief medical executive[]." *Id.* at 2, 4.

In an Order dated June 3, 2020, the Court dismissed the claims against the SCC Defendants, Defendant Koenig (the CTF Warden), and the Doe Defendants, without prejudice, and found cognizable Plaintiff's Eighth Amendment claims against Defendants Posson and Ashby. *See* Dkt. 10. As to the Doe Defendants, Plaintiff was advised that should he learn these Doe Defendants' identities through discovery, he may move to file an amended complaint to add them as named defendants. *Id.* at 5 (citing *Brass v. County of Los Angeles*, 328 F.3d 1192, 1195-98 (9th Cir. 2003). To date, Plaintiff has not done so. Meanwhile, the Court asked Defendants Posson and Ashby (hereinafter "Defendants") to waive service, *id.*, and each filed an executed

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

United States District Court
Northern District of California

waiver of service on July 10, 2020. Dkt. 20, 21.

Before the Court is Defendants' Motion for Judgment on the Pleadings and Summary Judgment. Dkt. 27. Defendant Ashby moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure against Plaintiff's claims, on the grounds that Plaintiff has failed to allege facts sufficient to state a claim against him and Defendant Ashby is entitled to judgment as a matter of law. *Id.* at 6. Both Defendants also move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the basis that (1) Plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a); (2) the undisputed facts show that Plaintiff cannot support his claim for relief; and (3) they are entitled to qualified immunity. *Id.* Although Plaintiff was given the opportunity to file an opposition to Defendants' motion, he did not do so.

Having read and considered the papers submitted in connection with this matter, the Court hereby GRANTS Defendants' Motion for Judgment on the Pleadings and Summary Judgment.

## II. FACTUAL BACKGROUND[2]

### A. Summary of Claim

Plaintiff received surgery for a broken ankle on June 8, 2018 while he was housed at High Desert State Prison ("HDSP"), performed offsite by a non-California Department of Corrections and Rehabilitation ("CDCR") doctor. Ashby Decl. ¶ 8. He was transferred to SCC briefly some

---

[2] This Order contains a few acronyms and abbreviations. Here, in one place, they are:

| | |
|---|---|
| CAM | Controlled Ankle Movement |
| CCHCS | California Correctional Health Care Services |
| CDC 7362 | Health Care Services Request Form |
| CDCR | California Department of Corrections and Rehabilitation |
| CME | Chief Medical Executive |
| CTF | Correctional Training Facility |
| DME | Durable Medical Equipment |
| HCARTS | Health Care Appeals and Risk Tracking System |
| HDSP | High Desert State Prison |
| HLR | Headquarters Level Response |
| ILR | Institutional Level Response |
| PCP | Primary Care Provider |
| RFS | Request for Service |
| SCC | Sierra Conservation Center |

time before early September 2018 while awaiting transfer to CTF, where he arrived on October 18, 2018 and remained until his release in September 2019. *Id.* ¶¶ 7, 8, 11. Plaintiff filed a health care grievance[3] on June 14, 2018 at HDSP regarding medical care for his ankle. Dkt. 1 at 7-10. Plaintiff was interviewed on July 2, 2018 and provided an Institutional Level Response ("ILR") on August 9 signed by the Chief Medical Executive ("CME") at HDSP Dr. Snell,[4] indicating that he had seen a nurse practitioner who had prescribed Tramadol and adjusted his inflatable boot. *Id.* at 7, 11. Plaintiff was dissatisfied with the ILR and appealed to the headquarters' level on September 6, presumably after he had been transferred to SCC, stating that he was in pain and receiving inadequate medical attention that was "hindering [his] recovery" and "rendering [him] in a constant state of mental and physical pain." *Id.* at 8. On November 30, S. Gates, Chief of CCHCS's Health Care and Correspondence and Appeals Branch, responded to Plaintiff's appeal and found that no intervention was necessary. *Id.* at 8, 12.

Plaintiff alleges that as a result of pursuing his grievance, Doctor Thomatos at SCC became biased against Plaintiff and "treated [him] indifferently" and on September 7, 2018 denied Plaintiff his pain medication "and when plaintiff complained . . . [Dr. Thomatos] created a scene and walked away from the interview and caused plaintiff to receive a (CDCR 128-warning chrono)." *Id.* at 3-4, 31. Plaintiff alleges that after this incident, he "began being denied his 'Orthopedic Shoes'" and "was mysteriously transferred to CTF prison." *Id.* at 3. Plaintiff alleges deliberate indifference in the denial of orthopedic shoes "on at least two occasions": one at SCC or HDSP and one at CTF. *Id.* at 3-4, 5. He claims that the first denial of orthopedic shoes caused him sharp nerve pains. *Id.* at 4.

When he arrived at CTF, Plaintiff alleges that Defendant Ashby "RE-ordered the orthopedic Shoe and ordered X-Rays which revealed that the surgery perform at SCC was inadequate and

---

[3] Exhaustion of a health care grievance in California prisons requires two levels of review—an Institutional Level and a Headquarters' Level. Gates Decl. ¶ 7.

[4] Plaintiff alleges that the CME at SCC responded to his grievance on August 9, 2018, dkt. 1 at 4; this was actually the CME at HDSP, *id*. at 11. It appears that Plaintiff initiated this grievance at HDSP but continued to pursue it from SCC and incorporated allegations regarding SCC. *See id.* at 7-12.

United States District Court
Northern District of California

needed a second surgery to remove loose screws." Dkt. 1 at 3-4. Plaintiff alleges that Defendant Ashby subsequently claimed that his boss would not approve the orthopedic shoes. *Id*. at 4. Plaintiff alleges that a nurse informed him that he was supposed to have orthopedic shoes during his medical appointment on June 7, 2019, but he did not receive any shoes on that date. *Id.* at 5; Pl.'s Ex. C (Plaintiff's June 7, 2019 priority pass).[5] Plaintiff also alleges that not having orthopedic shoes caused his condition to worsen over time, and caused him hip pain that required him to walk with a cane. *Id.*

**B. Plaintiff's Relevant Appeal History at CTF[6]**

Plaintiff submitted two grievances regarding the care he received from CTF physicians: Appeal Log Nos. CTF HC 18001504 and CTF HC 18001665. Gates Decl. ¶ 8.

**1. CTF HC 18001504**

Plaintiff filed a grievance on October 21, 2018 at CTF, stating as follows: "On 10-9-18 my ortho moon boot was swapped out for a pair [of] black and white state made tennis shoe w/o soft sole which has caused an additional injury to my preexisting injury." Dkt. 1 at 13. The grievance was assigned appeal log number CTF HC 18001504. *Id.* He received an ILR from CTF on December 31, 2018, with Defendant Posson's name in print below the signature field but signed by Dr. Sweet. *Id*. at 19. The ILR denied his grievance as follows:

---

[5] Plaintiff explains why he attached Exhibit C to his complaint, as follows:

> [P]laintiff has included as Exhibit "C" a priority ducat issued by CDCR to plaintiff to report to the medical department to be interviewed by a Primary Care Physician for an update on my condition and the attending nurse pulled up plaintiff's file on the computer and asked petitioner does he havs [sic] his galsses [sic] and the orthopedic shoes that were issued to plaintiff. Plaintiff answered "No, all I have is the glasses", the nurse informed plaintiff that he was issued a pair of orthopedic shoes. While the nurse did not take that situation any further . . . plaintiff left that interview slightly confused regarding a question in his mind as to why hasn't medical staff actually issued the orthopedic shoes.

Dkt. 1 at 5. The record shows that Plaintiff's priority pass has an issue date of June 6, 2019 and an appointment date of June 7, 2019. *Id.* at 33; Pl.'s Ex. C (Plaintiff's June 7, 2019 priority pass).

[6] As mentioned above, Plaintiff submitted one health care grievance regarding his ankle at HDSP (prior to arriving at CTF), which was assigned Appeal Log No. HDSP HC 1800868. Dkt. 1 at 7-8.

> You arrived at CTF on 9/20/18 with shoes as documented Durable Medical Equipment. During a Registered Nurse encounter on 10/23/18, you were evaluated and referred to your Primary Care Provider (PCP). You were seen by the PCP on 11/14/18. Orthotic boots were denied on 11/15/18. The denial was discussed with you on 12/6/18. Insoles were ordered by your PCP. Neuropathic pain medication was offered to you but you refused it. On 12/12/18 you received one pair of shoe inserts. A follow-up X-ray was completed on12/28/18. The findings were normal. You have a scheduled Medical Chronic Care follow up appointment scheduled for early January of 2019. You are currently prescribed Naproxen for pain management.

*Id*. Plaintiff was dissatisfied with the ILR and appealed to the headquarters' level on January 6, 2019, requesting a "prepaid[] call to [his] family physician" for a second opinion on whether he needed orthopedic shoes. *Id*. at 13. Plaintiff received a Headquarters' Level Response ("HLR") on March 20, 2019, finding no intervention was necessary and indicating that he had seen a non-CDCR podiatrist on February 4, 2019, who had recommended that he receive the second surgery and obtain over-the-counter orthotics afterwards. *Id.* at 15-16. The HLR noted that Plaintiff received a controlled ankle movement ("CAM") boot after the surgery and a follow-up with the podiatrist was pending scheduling. *Id.*

**2. CTF HC 18001665**

Plaintiff submitted another grievance at CTF on December 6, 2018, challenging the denial of the "ortho-type footwear" that Defendant Ashby had ordered for him. Dkt. 1 at 22. The grievance was assigned appeal log number CTF HC 18001665, and Plaintiff received an ILR on February 5, 2019 signed by Defendant Posson. *Id*. at 27. The ILR informed Plaintiff that he had been denied orthopedic footwear because he "did not meet the criteria for specialized orthotic boots," and that instead he had been offered insoles and medication, and that an orthopedic surgical evaluation was approved and pending scheduling for removal of Plaintiff's ankle hardware. *Id*. at 27-28. Plaintiff appealed on February 17, claiming that the doctor who performed the hardware removal surgery on his ankle informed him that the screws had loosened, "contradict[ing] statements provided by institution reviewing authority," and that his "medical needs . . . continue to be neglected." *Id.* at 23. Plaintiff received an HLR on March 20, 2019, stating that no intervention was necessary because the issue "regarding [his] orthotic shoes and left

ankle care" would not be addressed as it was a duplicate of appeal log number CTF HC 18001504, "for which a decision was rendered or is pending." *Id.* at 25-26.

**C. Plaintiff's Medical Care**

Plaintiff's June 8, 2018 surgery was an "open reduction with internal fixation" of his left ankle to repair a left fibular fracture. Ashby Decl. ¶ 9. At SCC in October, several months after his surgery, Plaintiff "was issued an orthopedic 'moon' boot," which is "a type of footwear commonly given to patients following surgery" that "has a hard exterior plastic exo-skeleton, interior inflatable bladders to provide a secure fit, and is outfitted with Velcro straps that operate like buckles . . . ." *Id.* ¶ 11. Plaintiff then submitted a Health Care Services Request Form ("CDC 7362") stating: "I'm presently wearing an ortho boot which my outside doctor recently request that my boot be replaced with a pair of soft shoes. The boot has caused my foot to become very stiff and painful." *Id.* ¶ 13. The moon boot was removed one week prior to Plaintiff's arrival at CTF, and replaced with "soft shoes" and "[f]oot orthoses inserts." *Id.* ¶ 11. The soft shoes were "standard prison shoes" made of canvas with "a removable insert to allow for the placement of orthotic inserts." *Id.* ¶ 12. After submitting the CDC 7362 request to transition out of the boot, Plaintiff then grieved the transition out of the boot in appeal log number CTF HC 18001504. Dkt. 1 at 13.

Plaintiff requested a medical appointment after his arrival at CTF, stating "I have an injured foot that needs urgent medical attention." Dkt. 27-5 at 9. He saw a nurse on October 23, 2018 and requested an "ortho soft shoe" to help his ankle pain and swelling. Ashby Decl. ¶ 14. He was prescribed Naproxen, referred to the doctor, and advised that it could take more time to recover fully from surgery. *Id.* ¶ 15; Dkt. 27-5 at 17. Plaintiff saw Defendant Ashby for the first time on November 14, 2018, and complained again of pain and swelling. Ashby Decl. ¶ 16. Defendant Ashby "documented the possibility the pain was caused by the location of the laces in [Plaintiff's] shoes and their proximity to the surgical site where he complained of increased pain," and "recommended that [Plaintiff] receive high top boots to help him when he was working in the kitchen." *Id.* ¶ 16. Defendant Ashby documented that he "would request orthotic boots." *Id.*

Defendant Ashby submitted a Request for Service ("RFS") for Plaintiff to receive an

orthotics evaluation, noting Plaintiff's "chronic swelling, pain" and need for "support boots above scews [sic] in ankle and secondary to [being] scheduled to work in kithen [sic] in water." Dkt. 27-5 at 24. The physician manager, Dr. Sweet, denied the RFS, stating: "Specialized orthotic boots not needed, regular state boots are laced and may be loosened at upper aspect to permit for chronic swelling. There is no foot abnormality that is documented in exam or xray that meets critieria [sic] for orthotic device." *Id.*

Defendant Ashby saw Plaintiff again on December 6, 2018. Ashby Decl. ¶ 18. He explained to Plaintiff that the orthotics evaluation had been denied by his manager. *Id.* He offered Plaintiff insoles. *Id.* Plaintiff "stated he also was experiencing numbness and pain running down the foot and ankle." Defendant Ashby offered to prescribe neuropathic medication, but Plaintiff declined. *Id*. Defendant Ashby ordered the inserts, which Plaintiff received on December 12, and ordered x-rays of Plaintiff's ankle. *Id*. The x-rays showed inflammation, which Defendant Ashby discussed with Plaintiff at another appointment on January 2, 2019. *Id.* ¶¶ 20-22. Defendant Ashby and Plaintiff agreed that Plaintiff would receive a second surgery to have the hardware removed, as the hardware may have been causing the ongoing pain and inflammation. *Id.* ¶ 22. Plaintiff also reported back pain and difficulty walking on January 2, and Defendant Ashby ordered a temporary cane. *Id.* ¶ 23.

Plaintiff went for an offsite orthopedic consult on February 4, 2019, regarding the ankle hardware removal surgery. Ashby Decl. ¶ 26. The surgeon diagnosed that the hardware was the likely cause of Plaintiff's pain. *Id*. ¶ 27. The surgeon also recommended that Plaintiff "obtain 'more supportive shoe gear and over the counter orthotics' and that the surgery take place as soon as possible." *Id*. The surgery took place four days later on February 8, after which the surgeon instructed that Plaintiff should wear a CAM boot. *Id*. ¶ 28. Returning from surgery, Plaintiff requested orthopedic shoes and a second mattress from Dr. Villa at the CTF clinic. *Id*. ¶ 30. Dr. Villa ordered Tylenol with Codeine and ibuprofen. *Id.* Dr. Villa noted that Plaintiff already had insoles, and Dr. Villa also pointed out that he would need to discuss the request for orthopedic shoes with Plaintiff's PCP, Defendant Ashby. *Id.*

Defendant Ashby saw Plaintiff on February 11, 2019. Ashby Decl. ¶ 33. He arrived in a

wheelchair wearing a CAM boot. *Id*. Defendant Ashby authorized a "lay-in" for 3 days to allow Plaintiff to stay in his cell all day during recovery, switched his medicine to morphine, and ordered daily surgical site dressings. *Id*. Plaintiff was seen several more times by Defendant Ashby and the offsite surgeon. On February 21, 2019, the offsite surgeon "authorized walking 'full weightbearing with CAM boot to left lower extremity for three weeks.'" *Id.* ¶ 39. On March 14, the surgeon recommended that Plaintiff "transition into supportive shoe gear, [] participate in physical therapy and [] return to the off-site clinic in another four weeks." *Id.* ¶ 41. On March 21, Plaintiff was seen at the CTF clinic by Dr. Park, who "recommended full weight bearing in the CAM boot until he was seen again by the podiatrist in three weeks." *Id.* ¶ 42. On April 23, 2019, Plaintiff submitted a CDC 7362 request form stating "I am presently wearing an ortho type cam boot. I have been wearing it much longer than recommended." *Id.* ¶ 44. It is unclear if he was seen by a nurse or referred to a doctor at that time and it does not appear that any changes were made to his footwear. Dkt. 27-6 at 40.

Plaintiff saw the offsite surgeon again on May 1, 2019. Ashby Decl. ¶ 45. The surgeon noted that Plaintiff was doing well and "should 'get out of [the moon] boot [and] into supportive shoegear [sic].'" *Id.* The surgeon also noted that Plaintiff had declined physical therapy and "should 'continue ambulating in regular shoegear [sic].'" *Id.* Defendant Ashby examined Plaintiff on May 13. *Id.* ¶ 46. He was still wearing the CAM boot and requested orthotic boots. *Id*. He also reported that his foot felt numb and tingly. *Id*. Defendant Ashby prescribed physical therapy, ordered orthotics, and advised Plaintiff to wear his regular state shoe in his housing unit and the CAM boot only for longer distances. *Id*. Defendant Ashby submitted the RFS for the orthotics that same day, and Dr. Sweet again denied the request, stating "Orthotics are not indicated for ankle problems." *Id*. ¶ 47.

Plaintiff saw Defendant Ashby again on May 22, 2019. Ashby Decl. ¶ 48. Plaintiff explained that he was still wearing the CAM boot because he could not fit his foot into his state shoe. *Id*. Defendant Ashby explained that another request for orthotic boots would be denied again. *Id.* Defendant Ashby issued a chrono allowing Plaintiff to sleep on a lower bunk, avoid long periods of standing, and elevate his foot, and advised Plaintiff to do his physical therapy. *Id.*

By June 19, 2019, the swelling had improved and Plaintiff was able to put on his regular shoe. *Id.* ¶ 49. Defendant Ashby saw Plaintiff for the last time before his release on September 9, 2019, at which time Plaintiff still had some swelling and pain but was overall improved. *Id.* ¶ 52.

At his September 22, 2020 deposition, Plaintiff testified that he believed he developed neuropathy as a result of his ankle surgeries. Dkt. 27-8 at 27. He formed this opinion based on his own research as well as a conversation with a doctor at county jail. *Id.* He described having continued symptoms of numbness and loss of control of his foot. *Id.* at 28.

## III. LEGAL STANDARD

### A. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is proper when, "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of the Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). On the face of the pleadings, the moving party must clearly establish "that no material issue of fact remains to be resolved." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

A Rule 12(c) motion is "functionally identical" to a Rule 12(b) motion. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, the same standard of review applies to both. Under both rules, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc.*, 896 F.2d at 1550. A court need not accept as true, however, unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

In deciding such a motion, a court may properly consider material submitted as part of the complaint, documents that are not part of the complaint but are referred to extensively in the complaint and considered authentic by all parties, and materials that are part of the public record and thus subject to judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir.

United States District Court
Northern District of California

2003).

Here, when reviewing the legal sufficiency of the complaint, the Court relied solely on the allegations therein and Plaintiff's exhibits to the complaint, constituting his appeal log numbers HDSP HC 18000868, CTF HC 18001504, and CTF HC 18001665 as well as the associated responses (Pl.'s Ex. A); the counseling chrono Plaintiff received at SCC (Pl.'s Ex. B); and Plaintiff's June 7, 2019 priority pass (Pl.'s Ex. C).

**B. Summary Judgment**

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendants have presented declarations from the following: Chief Gates (dkt. 27-1); Defendant Posson (dkt. 27-3); Defendant Ashby (dkt. 27-4); and Defendants' attorney Deputy Attorney General D. Williams (dkt. 27-7). Defendants also present Plaintiff's appeal records (dkt. 27-2) and excerpts from Plaintiff's September 22, 2020 deposition (dkt. 27-8). Meanwhile, Plaintiff has

filed his verified complaint (*see* dkt. 1 at 3) and exhibits. The Court will construe these filings as affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

## IV. DISCUSSION

### A. Defendant Ashby's Motion for Judgment on the Pleadings

Plaintiff alleges that Defendant Ashby was deliberately indifferent to his serious medical needs. Accepting all of Plaintiff's allegations as true, the complaint fails to state an Eighth Amendment claim against Defendant Ashby. Plaintiff's only allegations about Defendant Ashby in the complaint are that this Defendant ordered x-rays of Plaintiff's ankle and ordered orthopedic shoes, and subsequently informed him that the shoes had been denied by Defendant Ashby's boss. Dkt. 1 at 3-4. The only reference to Defendant Ashby in Plaintiff's grievances attached to the complaint is, similarly, that this Defendant informed him the shoes had been denied. *Id.* at 22.

Deliberate indifference to serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Mille*r, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). The analysis of a claim of "deliberate indifference" to serious medical needs involves an examination of two elements: (1) the existence of a prisoner's serious medical needs and (2) the establishment of a deliberately indifferent response by the defendant to those needs. *McGuckin*, 974 F.2d at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how

severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and a resulting harm. *See McGuckin*, 974 F.2d at 1060.

Further, liability may be imposed on an individual defendant under section 1983 only if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Id.* at 633.

Here, taking as true Plaintiff's allegation that depriving him of an orthopedic shoe put him at risk of serious harm, he has not alleged that Defendant Ashby was the proximate cause of the deprivation. Plaintiff alleges no purposeful act or failure to act by Defendant Ashby that resulted in the denial of the shoe and any resulting harm. Plaintiff alleges the opposite: that Defendant Ashby attempted to order him an orthopedic shoe. Nor does Plaintiff allege that Defendant Ashby participated in another official's act of denying the shoe—only that Defendant Ashby informed Plaintiff of such a denial. Plaintiff has not stated a claim for violation of the Eighth Amendment against Defendant Ashby, and the motion for judgment on the pleadings as to the claims against this Defendant is GRANTED.

**B. Both Defendants' Motion for Summary Judgment**

In the alternative, Defendants argue they are entitled to summary judgment.

Plaintiff alleges that both Defendants Ashby and Posson were deliberately indifferent to his serious medical needs regarding his ankle injury. Defendants have presented undisputed facts demonstrating that Plaintiff received regular care for his ankle injury at CTF. Defendant Ashby requested orthotic boots for Plaintiff after their very first appointment, and ordered x-rays of Plaintiff's ankle in both December 2018 and March 2019. Ashby Decl. ¶¶ 16; 19-20; 41. During his time at CTF, Plaintiff had 34 nursing encounters, 11 appointments with Defendant Ashby, five appointments with other doctors at CTF, and six appointments with the offsite surgeon. *Id.* ¶ 53.

Plaintiff was provided pain medication, insoles, and a cane, and he was evaluated for and received a second ankle surgery to remove the hardware. *Id.* ¶¶ 18, 22-23, 28. By the time Plaintiff left CTF, he had improved overall, although he reported continuing pain, numbness, and loss of control of his foot.

Plaintiff claims that when he arrived at CTF he was supposed to have been given a previously prescribed orthopedic shoe, which he did not receive. But Plaintiff's Durable Medical Equipment ("DME") and medical records do not show him having been issued an *orthopedic* shoe; rather, they show him having been issued a *therapeutic* or *soft* shoe. S*ee* dkt. 27-5 at 7, 26, 40. It appears that the shoes Plaintiff received at SCC before his CTF transfer were characterized in his medical record as a therapeutic shoe, which may have led to Plaintiff's belief that he was prescribed an orthopedic shoe. *Id.* Plaintiff received "[s]oft shoes black and white" on October 9, 2018 at SCC (*see* dkt. 27-5 at 7), which Defendant Ashby identifies as standard canvas prison shoes and which Plaintiff's DME receipts appear to characterize as "[t]herapeutic Shoes/Orthotics" with an expiration date of November 2, 2018 (*id*. at 26, 40). Plaintiff actually submitted a grievance about this same shoe, stating: "On 10-9-18 my ortho moon boot was swapped out for a pair [of] black and white state made tennis shoe w/o soft sole which has caused an additional injury to my preexisting injury." Dkt. 1 at 13. There is no evidence in the record to suggest that Plaintiff was ever missing a different prescribed shoe during his time at CTF.

Plaintiff also claims that he wore the "ortho moon boot" for too long at CTF after his second surgery. Ashby Decl. ¶ 44. After Plaintiff's second ankle surgery on February 8, 2019, the outside surgeon on February 21 recommended that Plaintiff wear the boot for three more weeks, and on March 14 the same surgeon recommended that he switch to "supportive shoe gear." *Id.* ¶¶ 39, 41. Plaintiff was still wearing the boot almost two months later on May 1, when the outside surgeon again suggested that Plaintiff transition into "supportive" or "regular" shoe gear. *Id.* ¶ 45. Plaintiff continued to wear the "ortho moon boot" because his foot would not fit into his regular shoe. *Id.* It was not until late June that Plaintiff was able to put on a regular shoe again. *Id.* ¶ 49. Plaintiff wore the boot for approximately three months longer than was recommended by his surgeon, and it is possible that if he had been provided a different shoe, he might have

transitioned out of the "ortho moon boot" sooner. However, Plaintiff has not raised a triable issue of fact as to whether either Defendant was responsible for the three-month delay in his transitioning out of the "ortho moon boot," nor as to whether the delay caused Plaintiff any injury.

Plaintiff also claims that he should have been provided an orthopedic shoe or boot at CTF both before and after his second ankle surgery. Before his second surgery, Defendant Ashby submitted a request for orthotic boots for Plaintiff to wear during his job in the kitchen so that he would not have to wear regular boots that were too tight on Plaintiff's surgical site on his ankle. Dr. Sweet denied the request because Plaintiff could loosen the laces on his regular work boots. Defendant Ashby and the outside surgeon were both of the opinion at that time that Plaintiff's pain was caused by the hardware in his ankle, which would not have been eliminated by wearing an orthopedic shoe nor worsened by wearing a regular shoe.

Plaintiff against requested orthopedic shoes immediately following his second surgery. At that time, he had been prescribed a CAM or moon boot for his recovery by the outside surgeon. There is no medical opinion in the record to suggest that Plaintiff should have worn an orthopedic shoe immediately after surgery. In March, April, and May of 2019, the outside surgeon recommended "supportive" or "regular" shoe gear, but the record does not indicate what type of shoes the surgeon meant and whether they were orthopedic. While there may be a disputed issue of fact as to whether the surgeon recommended orthopedic shoes that CDCR did not provide, it is not a material one. More importantly, neither Defendant is the proximate cause of Plaintiff's inability to obtain orthopedic shoes at that time. Instead, the record shows that Defendant Ashby tried to order orthotics for Plaintiff in May, and that Dr. Sweet, who is not named in this lawsuit, rejected the order. And no evidence exists in the record showing that Defendant Posson played any role in Plaintiff's request for orthopedic shoes in the spring of 2019.

In addition, even if either Defendant Ashby or Defendant Posson had intentionally prevented Plaintiff from obtaining orthopedic shoes, a difference of opinion as to the treatment of medical needs is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). In order to prevail on a claim involving choices between alternative courses of

treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837). CTF doctors' refusal to provide Plaintiff with orthopedic shoes was not a medically unacceptable course of treatment, nor did it put Plaintiff's health at excessive risk. Taking the facts in the light most favorable to Plaintiff, he cannot demonstrate that either Defendant Ashby or Defendant Posson was deliberately indifferent to his serious medical needs.

Accordingly, Plaintiff's Eighth Amendment claim fails as a matter of law. Therefore, Defendants Ashby and Posson are entitled to summary judgment as to this claim.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings and Summary Judgment is GRANTED.[7] Dkt. 27.

The Clerk of the Court shall terminate all pending motions and close the file.

This Order terminates Docket No. 27.

IT IS SO ORDERED.

Dated: July 30, 2021

JUDGE YVONNE GONZALEZ ROGERS
United States District Judge

[7] The Court's finding that Defendants are entitled to summary judgment as a matter of law on Plaintiff's Eighth Amendment claim obviates the need to address their alternative arguments regarding an entitlement to qualified immunity or Plaintiff's failure to exhaust his administrative remedies.